UNITED STATES of America, Plaintiff–Appellee,

v.

Jorge CARRILLO–ALVAREZ, Defendant–Appellant.

No. 92–50397.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1993.

Decided Aug. 24, 1993.

---

Shirley L. Feagles, Orange, CA, for defendant-appellant.

Robert O. Vicars, Jr., Sp. Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Jorge Carrillo–Alvarez appeals his sentence on the ground that the district court improperly departed upward under § 4A1.3 of the sentencing guidelines. That section permits a departure if the defendant's criminal history category under the guidelines inaccurately reflects his or her prior criminal conduct. We vacate and remand for resentencing.

## I.

Jorge Carrillo–Alvarez ("Carrillo") was arrested after leading Border Patrol agents on a seven-mile chase on Interstate 5 and on the surface streets of Oceanside, California. He admitted that the passengers in his vehicle (all but one of whom, on his instruction, left the vehicle before the chase began) were undocumented workers and that he was transporting them for a fee. He pleaded guilty to one count of transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(B).

Under the Sentencing Reform Act (Title II of the Comprehensive Crime Control Act of 1984), 18 U.S.C. § 3551 *et seq.*, the district court must consider at sentencing both the nature of the defendant's offense and his or her overall criminal history. The defendant's offense is expressed numerically as a total offense level, which is calculated as a base offense level to which points are added (or from which points are subtracted) according to the gravity of the crime and the seriousness of the surrounding circumstances. Carrillo's total offense level was eleven.[1]

The events that comprise a defendant's criminal history are reduced to criminal history points, which add up to a criminal history score.[2] Based on the criminal history score, the defendant is determined to fall into one of six criminal history categories. Because Carrillo's appeal concerns his criminal history category, we discuss his criminal record and the consequent guidelines calculations in some detail.[3]

At the time of his offense, Carrillo was twenty-five years old. Since his eighteenth birthday, he had been convicted of four misdemeanors (aiding and abetting the illegal entry of undocumented workers at age twenty, driving without a license at age twenty-three, and being under the influence of controlled substances at age eighteen and again at age twenty) and three felonies (auto theft at age twenty-two and residential burglary at age eighteen and again at age twenty-four). He was given the appropriate criminal history points for each of these convictions. He received additional points because he was on parole at the time of his offense and because he committed the offense less than two years after being released from prison. Under the guidelines, his overall criminal record was expressed as nineteen criminal history points.[4] Defendants with more than twelve criminal history points are placed in criminal history category VI, the highest category. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).[5] Thus, Carrillo's criminal record caused him to be assigned to the category that contains the most serious of all criminals.

Carrillo's offense level of eleven and criminal history category of VI yielded a guideline sentence of 27–33 months. In the plea

---

1. The base offense level for transportation of undocumented workers is nine. Pursuant to his plea agreement, Carrillo was given a two-level upward adjustment under United States Sentencing Commission, *Guidelines Manual*, § 2L1.1(b)(2) (Nov. 1, 1991) ("U.S.S.G. § 2L1.1(b)(2)", "§ 2L1.1(b)(2)"), because he had a prior conviction for aiding and abetting the unlawful entry of undocumented workers; a two-level upward adjustment under U.S.S.G. § 3C1.2 for reckless endangerment during flight; and a two-level downward adjustment for acceptance of responsibility. The result was a total offense level of eleven.

2. Criminal history points are assigned for a) prior sentences of imprisonment, b) current offenses committed while the defendant was under a sentence of criminal justice, and c) current offenses committed less than two years after the defendant was released from prison, or while the defendant was on escape status. U.S.S.G. §§ 4A1.1, 4A1.2(k), 4A1.2(*l*). No criminal history points are assigned for certain misdemeanors and petty offenses, certain offenses committed when the defendant was under the age of eighteen, certain offenses remote in time, diversionary dispositions, certain military sentences, sentences resulting from foreign convictions and tribal court convictions, and expunged convictions. U.S.S.G. § 4A1.2.

3. The plea agreement stipulated that Carrillo's total offense level was eleven, but left it to the district court to determine Carrillo's criminal history category.

4. Carrillo was given no criminal history points for a juvenile conviction for auto burglary. U.S.S.G. § 4A1.2(d) & application note 7. Some offenses for which no criminal history points are assigned may be considered grounds for departure under United States Sentencing Commission, *Guidelines Manual*, § 4A1.3, p.s., the provision at issue here, precisely because the criminal history category has not taken them into account. *See* U.S.S.G. §§ 4A1.2(h-j); 4A1.3(a-e); *United States v. Durham*, 941 F.2d 858, 863 (9th Cir. 1991) (permitting an upward departure under § 4A1.3 on the ground that the defendant's juvenile conviction was not considered in calculating his criminal history score). However, Carrillo's juvenile conviction is not such an offense. *See infra* Part III.A.4.

5. According to the sentencing table, defendants with zero or one criminal history points are assigned to category I; those with two or three points to category II; those with four, five, or six points to category III; those with seven, eight, or nine points to category IV; those with ten, eleven, or twelve points to category V; and those with thirteen or more points to category VI. *Id.*

agreement, the government agreed to recommend the low level of the applicable guidelines range. Accordingly, the prosecutor recommended a sentence of 27 months. The probation officer who prepared the pre-sentence report, however, suggested that the court depart upward. In doing so, he relied on a guideline policy statement, United States Sentencing Commission, *Guidelines Manual*, § 4A1.3, p.s (Nov. 1, 1991) ("U.S.S.G. § 4A1.3," "§ 4A1.3"). At the time of Carrillo's sentence, the statement read:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. . . .
>
> A departure under this provision is warranted when the criminal history category *significantly under-represents* the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. . . .
>
> The Commission contemplates that there may, *on occasion*, be a case of an *egregious, serious criminal record* in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted.

U.S.S.G. § 4A1.3, p.s. (November 1, 1991) (emphasis added).[6] The probation officer's reason for recommending an upward departure under § 4A1.3 was that "Mr. CARRILLO–ALVAREZ's criminal history score ex-

ceeds the top end of the sentencing table. If the sentencing table was [sic] extrapolated his score of 19 would equate to a hypothetical criminal history category of VIII." For this reason, the probation officer recommended a sentence of 33–41 months.

At sentencing, the court stated,

> [I]t appears as though the things that you are doing are creating what we call recidivism and the criminal history category really does not properly reflect the seriousness of your past criminal conduct. And now, for whatever reason, you're back before the court again on a situation that has already come to light in Temecula where there were several people killed as a result of these high-speed chases through city streets.[7]
>
> The fact of the matter is, sir, we just cannot tolerate your constant violations. Your law violations are to the point now where any judge takes a look at you and says to himself why let this man out. He's going to go right back and do the same thing again and again and again, as you've done since you were 18 years old.

After citing § 4A1.3, the court quoted the probation officer's discussion in the pre-sentence report regarding a hypothetical criminal history category VIII and sentenced Carrillo to 41 months' imprisonment and three years of supervised release. Contending that the court's departure was improper, Carrillo appeals.

## II.

The question before us is whether, in view of the Sentencing Commission's guidelines, policy statements, and official commentary,

---

**6.** The Sentencing Commission has since provided additional guidance that describes more fully the circumstances in which a departure from category VI might be warranted. The additional guidance makes clear that a sentencing court must consider the defendant's overall record, rather than robotically adding up the bare number of the defendant's criminal history points. *See infra* Part III.B.1.

**7.** On June 2, 1992, six days before Carrillo was sentenced, a truck carrying undocumented workers led Border Patrol agents on a high-speed chase. The truck crashed in front of a high

school in Temecula, California. Five people, including four high-school students, were killed. Sebastian Rotella & Patrick J. McDonnell, *5 Killed as Truck Fleeing Border Agents Crashes*, L.A. Times (Home edition), June 3, 1992, at A1. A sixth person subsequently died. Tom Gorman, *New Charges Filed in Temecula Case, L.A. Times* (San Diego City edition), June 9, 1992, at B1.

Carrillo's acts in evading capture were factored into his guideline range. As noted above, his base offense level was adjusted upward by two levels for reckless endangerment during flight under U.S.S.G. § 3C1.2. *See supra* note 1.

the district court properly concluded that the number and nature of Carrillo's criminal convictions constitute aggravating circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," so that a departure was warranted under § 4A1.3. *United States v. Luscier,* 983 F.2d 1507, 1510, 1511 (9th Cir.1993) (quoting 18 U.S.C. § 3553(b) (1988)); *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir. 1991) (en banc). Whether the grounds relied upon by the district court are sufficient to warrant an upward departure is a question of law we review de novo. *See United States v. Lira–Barraza,* 941 F.2d at 746. The extent of any such departure is reviewed under the abuse of discretion standard. *Id.* at 747. We hold that the district court erred on two alternate grounds. Each warrants vacation of the sentence.

### III.

The district court erred in departing upward under § 4A1.3. In establishing category VI, the Sentencing Commission intended it to apply to precisely the kind of criminal record that is before us here. Carrillo's criminal history is simply not egregious enough to justify a departure.

### A.

■ As a general rule, an upward departure under § 4A1.3 is warranted only "when the criminal history category *significantly under-represents* the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. (emphasis added). Such a departure is appropriate only in an unusual case, because the criminal history category of the sentencing guidelines is designed expressly to account for a defendant's prior criminal conduct. *United States v. Singleton,* 917 F.2d 411, 412 (9th Cir.1990). Therefore, a court should not depart unless the defendant's record is "significantly more serious" than that of other defendants in the same criminal history category. *United States v. Gayou,* 901 F.2d 746, 748 (9th Cir. 1990) (defendant in category IV) (citing *Unit-*

*ed States v. Hernandez–Vasquez,* 884 F.2d 1314, 1336 (9th Cir.1989)).

■ The Sentencing Commission's policy statement contains specific instructions concerning upward departures when the defendant is in criminal history category VI. According to those instructions, a district court may depart upward from the guideline range applicable to the most serious criminal history category only in extremely limited circumstances. Only "*on occasion,* [when there is] a case of an *egregious, serious* criminal record in which even the guidelines range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history," may the district court depart. § 4A1.3 (emphasis added). We find that Carrillo's adult criminal record of four misdemeanors and three felonies is not so egregious that a departure is warranted.

1.

The government contends that Carrillo's youth, and his two state convictions for residential burglary, reflect a threat of recidivism and a pattern of serious offenses that the district court properly took into account at sentencing. We do not discount the number of Carrillo's offenses or the seriousness of the crime of residential burglary. However, defendants in category VI are by definition the most intractable of all offenders. The record does not reflect that Carrillo, among all those in that criminal history category, has a criminal record so serious, so egregious, that a departure is warranted.

We are guided to this conclusion by *United States v. Singleton, supra.* There, we found an upward departure "just barely" warranted for a category VI defendant whose record was more extensive than Carrillo's, and whose offenses, unlike Carrillo's, were of accelerating seriousness and violence. 917 F.2d at 413. Singleton committed ten offenses between his eighteenth and twenty-sixth birthday; Carrillo committed seven, four of which were misdemeanors. *Id.* Singleton's offenses escalated in severity, and included serious felonies, violent conduct, and firearms violations. *Id.* Carrillo's record reflects none of these factors. It is thus significantly less serious than Singleton's. If Sin-

gleton's record "just barely" justifies a departure under § 4A1.3, Carrillo's indubitably fails to justify one at all.

### 2.

■ We note that § 4A1.3 permits an upward departure where a defendant has "an extensive record of serious, assaultive conduct" for which he received "what might now be considered extremely lenient treatment in the past." U.S.S.G. § 4A1.3, p.s. (example set forth in commentary). The commentary notes that defendants in their early twenties or younger are more likely than others to have received lenient treatment. However, this portion of the commentary is not relevant here. As discussed above, Carrillo's record includes only three felonies, and none of his crimes involved physical assault.[8] The issue of departure on the basis of lenient treatment for violent crime therefore cannot arise. Nor, given the nature of Carrillo's record, does any other aspect of the commentary to § 4A1.3 provide a justification for an upward departure.

### 3.

■ The fact that Carrillo previously committed an offense similar to the one for which he now appeals the sentence is not a proper factor to consider in determining whether an upward departure is warranted. Under § 4A1.3, the similarity between a defendant's current offense and a prior offense may not be a ground for a departure if the sentencing guidelines have already taken the similarity

into account. *United States v. Chavez–Botello*, 905 F.2d 279, 280–81 (9th Cir.1990) (per curiam) (citing 18 U.S.C. § 3553(b)). Carrillo's current offense of transportation of illegal aliens is similar to his prior offense of aiding and abetting the illegal entry of aliens. However, the Sentencing Commission adequately accounted for the similarity in the guidelines. Under the relevant provision in effect at the time of his sentencing, Carrillo's base offense level was increased by two levels *expressly because* his prior and present offenses were similar to each other. U.S.S.G. § 2L1.1(b)(2) (Nov. 1, 1991).[9] For that reason, and because the plea agreement stipulated to the factors comprising Carrillo's offense level, leaving to the district court only the determination of his criminal history category and his ultimate sentence, the similarity between Carrillo's prior and present offenses cannot be considered in determining whether an upward departure is warranted.[10]

### 4.

■ Our conclusion that Carrillo's criminal conduct is not egregious is based not only on the conduct included in his criminal history score, but also on the conduct that was not so included. Section 4A1.3 provides examples of prior criminal conduct not included in a defendant's criminal history score that might warrant an upward departure. The examples "uniformly refer to either 'serious' or 'large scale' offenses." *United States v. Luscier*, 983 F.2d at 1511 (quoting § 4A1.3).[11]

> **§ 2L1.1. *Smuggling, Transporting, or Harboring an Unlawful Alien***
>
> (b) Specific Offense Characteristics
>
> (2) If the defendant previously has been convicted of smuggling, transporting, or harboring an unlawful alien, or a related offense, increase [the base offense level] by 2 levels.

U.S.S.G. § 2L1.1(b)(2) (Nov. 1, 1991). *See supra* note 1.

---

**8.** The guidelines require additional points to be added to a defendant's criminal history score if the defendant committed his current offense while on probation or parole. U.S.S.G. § 4A1.1(d). We have recently held that the guidelines do not take into account a defendant's probation violation, as opposed to the status of being on probation at the time of an offense, and that the violation may be a ground for an upward departure under § 4A1.3. *United States v. Durham*, 995 F.2d 936, 938–39 (9th Cir.1993). However, *Durham* does not apply here. Although Carrillo was on parole at the time of his offense (as noted above, his criminal history score was increased for that reason, *see supra* text accompanying note 4), he was not charged with parole violation.

**9.** At the time Carrillo was sentenced, § 2L1.1(b)(2) provided:

**10.** *See supra* note 3.

**11.** The examples are:

the case of a defendant who (1) had several previous foreign sentences for *serious* offenses, (2) had received a prior consolidated sentence of ten years for a series of *serious* assaults, (3)

Carrillo's record shows a juvenile conviction for auto burglary, which was not factored into his criminal history score.[12] His offense was neither "serious" nor "large scale." *Id.* It cannot bridge the gap between his record and that of an offender whose record is so egregious that an occasional departure upward from category VI is permissible.

### B.

We considered above all of the factors relevant to a determination whether Carrillo's criminal record is so egregious that an upward departure is warranted. We now turn to two related arguments that are inconsistent with the methodology for determining whether a criminal record is egregious. One argument misconstrues § 4A1.3; the other misconstrues the overall structure of the sentencing guidelines.

### 1.

At oral argument, the government urged that the sentence be affirmed on the ground that Carrillo has only two fewer criminal history points than the defendant in *United States v. Singleton, supra* (nineteen as opposed to twenty-one). The government's purpose seems to be to urge us to hold that the sheer number of Carrillo's criminal history points makes his record egregious. As pointed out above, however, it was not Singleton's twenty-one criminal history points that persuaded us to approve an upward

departure in that case. It was the fact that Singleton engaged in increasingly grave criminal conduct, in physically violent crimes, and in weapons·offenses. 917 F.2d at 413.[13]

An upward departure under § 4A1.3 may not be based on mechanical calculations. It must be justified, rather, by a qualitative difference between the defendant's overall record and that of other defendants in the same criminal history category. The Sentencing Commission has explicitly recognized this with respect to departures in category VI cases.[14] The Commission has made clear that, when a defendant is in that category, the sentencing court's discretion should be guided by the nature of the defendant's overall prior record, rather than by the bare number of criminal history points. In the 1992 version of the *Guidelines Manual,* the Commission provided the following additional guidance: "*In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.*" U.S.S.G. § 4A1.3, p.s. (Nov. 1, 1992) (emphasis added). The Commission illustrated the point with the example of two defendants, one whose record shows "nine prior 60–day jail sentences for offenses such as petty larceny, prostitution, or possession of gambling slips," and the other whose record shows five prior sentences for major offenses. The former

had a similar instance of *large scale* fraudulent misconduct established by an adjudication in a Securities and Exchange Commission enforcement proceeding, (4) committed the instant offense while on bail or pretrial release for another *serious* offense or (5) for appropriate reasons, such as cooperation in the prosecution of other defendants, had previously received an extremely lenient sentence for a *serious* offense.... However, a prior arrest record itself shall not be considered under § 4A1.3.

U.S.S.G. § 4A1.3, p.s. (emphasis added). In *United States v. Luscier,* we held that a single tribal court conviction for breaking and entering that resulted in a thirty-day jail sentence and was not computed in the defendant's criminal history category is an insufficient basis for departure under § 4A1.3. 983 F.2d at 1511.

**12.** U.S.S.G. § 4A1.2(d) & application note 7. *See supra* note 4.

13. *See supra* Part III.A.1.

14. The issue is unlikely to arise when a defendant is in a different criminal history category. All defendants with thirteen or more criminal history points are placed in category VI. That is the only category with no upper boundary. *See infra* Part III.B.2; *see also supra* note 5. By contrast, categories I through V are each limited to a range of two or three points. *See supra* note 5. Thus, the difference in points among defendants in each of these lower categories is always minimal. Therefore, a sentencing court contemplating a departure under § 4A1.3 on the ground that the defendant's criminal history score is high compared to others in the same criminal history category is, in all likelihood, considering a category VI case.

defendant may have a higher criminal history *score* than the latter, but a less serious criminal history overall. *Id.* The Sentencing Commission's recent analysis makes explicit what has always been implicit in the policy statement. The sheer number of a defendant's criminal history points is not, so to speak, the point. A sentencing court must look, rather, to the defendant's overall record. Only if the overall record is significantly more serious than those of others in the same criminal history category is an upward departure justified.

### 2.

As noted earlier, the reason that the probation officer who prepared Carrillo's presentence report recommended an upward departure under § 4A1.3 was that Carrillo's criminal history score "exceeds the top end of the sentencing table. If the sentencing table was [sic] extrapolated his score of 19 would equate to a hypothetical criminal history category of VIII." The district court adopted both the recommendation and the reasoning behind it.[15]

The probation officer's reasoning was erroneous. Under the Commission's design, there is no higher criminal history category than category VI; all defendants with criminal history scores between thirteen and infinity belong there. Category VI thus requires a minimum number of criminal history points, but sets no maximum. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). Therefore, contrary to the probation officer's view, Carrillo's criminal history score does not "exceed[ ] the top end of the sentencing table." It exceeds the minimum number of points necessary before a defendant may be classified in category VI. In that respect, however, it is no different from that of any other defendant with more than twelve points.

The probation officer apparently believed that the Commission erred in creating only six criminal history categories. Under the guidelines, criminal history categories I and II each encompass a two-point range of criminal history scores, while categories III through V each encompass a three-point

range.[16] Category VI, according to the Sentencing Commission, includes *all* defendants with criminal history points in excess of those in category V. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). Finding this scheme unsatisfactory, the probation officer apparently decided that category VI, like categories III, IV, and V, should be limited to a three-point range. He appears further to have decided that additional categories should be created, each with a three-point range of criminal history scores. In the probation officer's view, defendants with thirteen, fourteen, or fifteen criminal history points should be assigned to category VI; those with sixteen, seventeen, or eighteen points to category VII, those with nineteen, twenty, or twenty-one points to category VIII, and so on. Under this scheme, Carrillo, whose criminal history score was nineteen, would be in the newly-created category VIII. The probation officer's approach is clearly contrary to the rules promulgated by the Sentencing Commission and the structure the Commission intended the guidelines to represent.

### C.

At the time of his offense, Carrillo's seven years of adulthood had been punctuated by convictions for seven crimes. However, his overall record does not demonstrate an egregiousness that sets him apart from other defendants in category VI. We emphasize, as does the Sentencing Commission, that a departure from category VI is warranted only in the highly exceptional case. *See* § 4A1.3. The defendants in category VI are, by definition, the most intractable of offenders. Departures in their cases are impermissible under § 4A1.3 if their records are similar to those of others in their category. Departure is reserved for those whose records are extreme by comparison. Carrillo does not have such a record. His sentence must therefore be vacated.

### IV.

■ We are required to vacate Carrillo's sentence for another reason as well. The

---

**15.** *See supra* page 319.

**16.** *See supra* note 5.

district court's statement of its reasons for departure was inadequate.

When a district court departs upward pursuant to that provision, it must "specify the *particular facts* of a defendant's history that illustrate why the defendant is unlike other defendants in the same [criminal history] category." *United States v. Singleton,* 917 F.2d at 412 (emphasis added). The district court's findings must be "sufficiently *specific* so that this court can engage in the meaningful review envisioned under [the Sentencing Reform Act]." *United States v. Wells,* 878 F.2d 1232, 1233 (9th Cir.1989) (emphasis added). We do not search the record for permissible reasons for departure, but rather consider only the justifications the district court actually advanced at sentencing. *United States v. Streit,* 962 F.2d 894, 903 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992).

Here, the district court did not point to *any* particular facts that made Carrillo's criminal record "significantly more serious" than that of other defendants in category VI, *id.* (quoting *United States v. Singleton,* 917 F.2d at 412) (emphasis added), or that made it so "egregious" that even the guideline range for category VI inadequately reflected it, U.S.S.G. § 4A1.3, p.s. Instead, the court stated that Carrillo had been convicted a number of times in the past.

The district court's statement to the effect that Carrillo was a recidivist is similar to other formulations of reasons for departing under § 4A1.3 that we have rejected in the past. Most similar is *United States v. Michel,* 876 F.2d 784 (9th Cir.1989). There, the district court stated, "Since defendant is in the highest [criminal history] category by reason of several convictions, additional convictions which would otherwise be included in the calculation add nothing further. Defendant is very close to career criminal status. Other similar criminal conduct is not reflected. All of this reflects strong recidivist tendencies." *Id.* at 786. We vacated the defendant's sentence, finding the district court's statement of reasons "conclusory" and noting that it neither clearly identified specific aggravating circumstances that justified the departure nor set forth any reason

for finding that the Sentencing Commission had inadequately considered the circumstances of the defendant's record in formulating the guidelines. *Id.* *See also United States v. Wells,* 878 F.2d at 1233 (rejecting as conclusory a district court's statement of reasons that merely recited the elements of § 4A1.3); *United States v. Cervantez Lucatero,* 889 F.2d 916, 917 n. 2, 919 (9th Cir.1989) (vacating a sentence because the district court departed upward on the ground that the defendant's state sentences were too lenient without showing the basis of such a conclusion or the reliability of its information).

Statements of reasons for departure under § 4A1.3 that we have found adequate in the past have invariably included discussions as to why the defendant's criminal history score or category does not reflect *particular* crimes committed by the defendant. For example, we have found adequate a district court's statement that a preponderance of the evidence showed that the defendant had committed other crimes that would likely result in at least two additional convictions and that two prior convictions for theft were not computed in the defendant's criminal history category. *United States v. Starr,* 971 F.2d 357, 363 n. 7 (9th Cir.1992). Pointing to multiple convictions for which the defendant served consolidated sentences, which drastically reduced the defendant's criminal history score, has also been found an adequate statement of reasons. *United States v. Streit,* 962 F.2d at 904–05. Reliable information showing that the defendant engaged in drug trafficking for which he was not convicted has been found similarly adequate. *United States v. Schubert,* 957 F.2d 694, 696 (9th Cir.1992). We have also found satisfactory a statement noting that the defendant committed two identical offenses and that the guidelines did not adequately take such recidivism into account. *United States v. Chavez–Botello,* 905 F.2d at 280. A sentencing court that departs upward under § 4A1.3 must point with similar particularity to the factors in the defendant's record that warrant the departure. Unless it does so, we cannot engage in the meaningful review contemplated by the Sentencing Commission. *Wells,* 878 F.2d at

1233. A mere recitation of phrases such as "recidivist tendencies" or "egregious criminal record" simply does not suffice. The court must show, *precisely and in detail,* why the defendant's record is significantly more serious than those of others in the same criminal history category. Without a careful and complete explanation, we must vacate and remand.

Here, the district court's conclusory statement fails under the *de novo* review required by *Lira–Barraza,* 941 F.2d at 746.

### Conclusion

For both of the reasons set forth above, we vacate Carrillo's sentence and remand for resentencing. This panel will retain jurisdiction over any subsequent appeal.

**VACATED AND REMANDED.**